CARLOS BERROCAL FERRER ET UX., Petitioners, *v.* DISTRICT COURT OF PUERTO RICO, MAYAGÜEZ SECTION, ÁNGEL FIOL NEGRÓN, JUDGE, Defendant.

No. 1962. Argued July 29, 1953.—Decided February 18, 1954.

[Page content redacted]

A. *Nazario Janer* for petitioners. *Vicente Palés Matos* for intervener, defendant in the main action.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On June 9, 1945, petitioners herein, Carlos Berrocal Ferrer and his wife Daniela Sánchez, leased a lot of 275 square meters in Santiago Veve Boulevard of the city of Mayagüez, Puerto Rico, to intervener herein, Frank Fournier, married to Monserrate Rodríguez. The essential clauses of this first written contract between the parties are the following:

"D. The parties hereto wish to state *that if prior to the expiration of the contract*, that is, before the five-year period, Mr. Fournier should decide not to continue the lease, the latter shall be obliged to remove any construction he may have erected on the leased lot, leaving the said lot in the same condition in which he finds it at the beginning of the contract.

"E. The parties hereto likewise state *that if after the five-year period* the lessees (read lessors) should decide to construct any commercial building on this lot, they shall be obliged to give Mr. Fournier the opportunity to rent the construction which may have been erected.

"F. Finally, the parties appearing herein state that Mr. Fournier *is free to erect and introduce any improvements on the leased lot provided they are in keeping with the progress and* needs of the business.

"G. The parties hereto further state that if the lessees (read lessor) wished to sell the lot which is the object of this lease contract, the lessor (read lessee) Mr. Fournier *shall be given preference upon payment of a reasonable price.*"

This was the contract existing between the parties when the lessee, intervener herein, Mr. Fournier, began constructing a building with money belonging to the conjugal partnership established with his wife Monserrate Rodríguez. Does clause F which authorizes Mr. Fournier "to erect and introduce any improvements on the leased lot," make the conjugal partnership a builder in good faith? Bear in mind that the permission granted is (1) to erect and (2) to improve.

■■ There seems to be some confusion as to whether a lessee who builds upon a leased lot, may be considered a builder in good faith. Undoubtedly, a lessee who builds on a leased lot, *without the owner's permission to do so* is a builder in bad faith: Judgment of January 15, 1904 of the Supreme Court of Spain; Judgment of June 30, 1903 of the Supreme Court of Spain. Therefore a lessee *without authority to build*, who erects a building on the leased lot, is not entitled to indemnity for materials and labor as established by § 297 of the Civil Code of Puerto Rico. But there is no doubt either, that a person who builds on a leased lot *with the consent of the owner* is a builder in good faith: *Palermo* v. *Court*, 58 P.R.R. 191, (Travieso), (1941); *People* v. *Carrasquillo*, 58 P.R.R. 178, 182, (Todd, Jr.), (1941) p. 182; *Berrocal* v. *Registrar*, 54 P.R.R. 501, 505, 506, (De Jesús), (1939). Therefore, if a lessee who is authorized to build on the leased lot, does so, he is entitled to indemnity for materials and labor as established by § 297 of the Civil Code of Puerto Rico. As may be seen, the question deals strictly with the contract in order to determine whether or not the lessee was authorized to build. In the instant case there is no doubt that it is not a question of an ordinary lease period, but of a lease which contains an express per-

mission to build on or improve the leased lot. Therefore, the conjugal partnership is, without doubt and by the very terms of the contract, a builder in good faith.

When the lessors realized that the construction which the lessee had commenced was of a stable nature, they requested him on July 2, 1945 to modify the original contract, which he did, in the following terms:

"H—If at the expiration of the term fixed for this lease, that is, at the end of the five-year period previously stipulated, *no agreement is reached as to a new lease*, the lessee shall be obliged to withdraw, on his own account and with his own money, whatever buildings he may have constructed on the leased lot within half a year after the date of the expiration of the lease and the lessee shall be obliged to continue paying the same rent stipulated for the said lease, and this condition shall not be understood as an extension or renewal of the said contract.

"I—The lessors state that they have no intention of either selling the lot involved in this lease *or of purchasing the buildings which the lessee may construct thereon* and that this contract has been made so as to make the lot available to the lessee in order that he can build thereon, but subject to the obligation of removing whatever buildings he may erect at the expiration of the contract entered into on June 9 or on any other date which may subsequently be entered between them.

"J—*This explanatory clause has been deemed necessary because the lessors have noticed that the lessee is making a concrete structure on the leased lot and the lessee should be specifically warned of this fact in order that he protect his interest as he may deem best.*

"K—Upon delivering the lot, the lessee shall leave it completely free of any buildings he may have erected thereon, the ground must be levelled as it was when delivered to him, and free of any rubbish and materials, and he is hereby notified that should he fail to do so the lessors shall then undertake to do it and the lessee shall reimburse them the total cost of whatever work may be necessary in order to accomplish said purpose."

As may be seen, it is not a question of adding explanatory statements to former clauses, but of substantial amendments. As the law sees it there are two different contracts, which do not complement each other, but rather alter decidedly the real property rights which they contain. For example: clause F of the first contract, which gave to the conjugal partnership authority to erect and introduce any improvements on the leased lot, with the corresponding indemnity to the builders in good faith and the compensation for necessary expenses granted by § 382 of the Civil Code of Puerto Rico, becomes by virtue of clauses H and K of the second contract an actual lien and liability for the conjugal partnership, because by imposing on the lessee the obligation to withdraw the constructions after the contract expires, the conjugal partnership could no longer obtain compensation for materials and labor to which every builder in good faith on another's land is entitled before he can be evicted. Likewise, as a result of the obligation to deliver the ground levelled in the same condition as when it was leased, the conjugal partnership could not receive compensation for necessary expenses such as refill, drainage, house connections and paving.

■■ This second contract was signed by the husband without intervention on the part of his wife. The original opinion delivered by this Court in the instant case was to the effect that since the demolition of the building agreed to in the second contract was a mere "act of administration," this second contract could be signed by the husband without the intervention of his wife. A more intensive study of the issue raised has convinced us that we must abandon such a ruling.

Acts of administration include "leasing, collecting rent, issuing receipts and performing everything which involves acts of administration" properly speaking, 2 Manresa 752, (*Instituto Editorial Reus*, 1944 Edition.) That is why our former jurisprudence always confronted with great caution

those so-called "acts of administration": *Agrait et al.* v. *The Registrar of San Juan*, 31 P.R.R. 205, 206 (Del Toro), (1922); *Heirs of José Hernáiz* v. *Romero*, 26 P.R.R. 363, (Hutchison), (1918); *Fajardo Sugar Co.* v. *The Registrar*, 25 P.R.R. 176, 177 (Del Toro) (1917).

Notwithstanding our freedom of action before precedents which do not stem from our own case law, a judicial decision is not merely a reconciliation, more or less scientific, of adjudged cases. A judicial decision is, in addition, the creation of a juridical rule which must conform to the way of living of a people, and by way of living we mean the system of individual strivings which little by little are integrated into the collective *ethos* of a community.

Since 1902, Puerto Rico abandoned the civil doctrine of submitting the married woman to the juridical will of her husband as something out of harmony with the American spirit. Sections 91 and 1313 of the Civil Code of Puerto Rico of 1930 are an exact counterpart of §§ 159 and 1328 of the Revised Civil Code of Puerto Rico, 1902 edition—the inadequacy of calling it "revised" originated from the need to differentiate it from the Spanish Civil Code. From that day the married woman freed herself from her former Romanic condition of being "in manus mariti."

Already in 1903—*Amadeo* v. *Registrar*, 3 P.R.R. 134, 137—the Chief Justice of this Court, Mr. José Severo Quiñones, stated: "Moreover, inasmuch as aforesaid section 1328 of the new Civil Code is in the nature of a prohibitory law to safeguard good morals and public order, since its object is to protect married women against such frauds and abuses to the prejudice of their interests as may be committed by their husbands, thereby contributing to maintain peace and morality in the family home, the application of said law cannot be omitted, notwithstanding contrary provisions by other foreign laws."

To consider the married woman as a subject of law of equal juridical stature as her husband for the disposition of

conjugal property has been, since the beginning of this century, not only an institution of our civil law, but part of the way of living of our people. A series of former decisions of this Court holding that the interest of the wife in the conjugal partnership while it exists, "is a mere expectancy or hope to receive one moiety of the liquid assets that might exist when the partnership is dissolved," *National City Bank* v. *De la Torre et al.*, 54 P.R.R. 219, 223 (De Jesús), (1939) ; *De la Torre* v. *National City Bank of New York*, 110 F. 2d 976, 983 (Magruder) (1940), second paragraph, should not prevail locally because that doctrine is strongly impregnated with the classic Spanish doctrine, and has no reason to survive in our Puerto Rican way of living. If we should decide to continue enlarging the so-called "acts of administration" of the husband, the time would come when the shrewdness of a notarial clerk might devise a series of fraudulent acts which would leave the married woman defenseless within an institution which is allegedly created for her protection.

The act of administration may not be taken to mean expressly or implicitly the disposition of real property rights within an immovable, without giving rise to what Justice Magruder called a retrogression within the modern tendency of development, *De la Torre* v. *National City Bank of New York*, 110 F. 2d 976, (Magruder), (1940), p. 983, second paragraph, and which in our own words we would term a reversion to the Romanic doctrine, and by inference, a series of legalistic actions which are actual alienations, encumbrances or obligations for a valuable consideration would be sanctioned for the future.

Assuming without deciding, that the lessee, intervener herein, could have executed the first contract by himself, as administrator of the conjugal partnership, it is beyond any question that the lessee, intervener herein, as administrator of the conjugal partnership, could not execute by himself the second contract because the amended rights are all real

property rights created in favor of the conjugal partnership: *Bonillerse* v. *González et al.*, 17 P.R.R. 1084 (McLeary) (1911).

██ The law is always the major premise of any juridical conclusion. Section 262 of the Civil Code of Puerto Rico provides that "things may be immovable either by their own nature or by their destination or the object to which they are applicable"; § 263, paragraph 1 of the same Code establishes that "the following are immovables: 1—Lands, *buildings*, roads and structures of every kind adherent to the soil"; § 264 of the same Code provides: "the following incorporeal things are considered as immovable from the object to which they apply: 1. . . . , 2. *Any right or obligation established on any immovable.*" Therefore, the right to receive compensation for materials and labor to which every builder in good faith is entitled, is a real property right because it is constituted on real property, and any waiver thereof is equivalent to an alienation of the real property, since to alienate means "the act . . . which extinguishes, creates and modifies rights . . . which requires from the person who alienates as well as from the acquirer the conditions of legal capacity essential for consent" —13 *Enciclopedia Jurídica Española* 566—1910 Edition.

It is likewise clear that the lessee, intervener herein, had no power, as administrator of the conjugal partnership, to alienate any real property right of his wife. Section 91 of the Civil Code of Puerto Rico provides that "the husband shall be the administrator of the conjugal property, except when stipulated otherwise; . . . nevertheless the real property belonging to the conjugal community may not be *alienated* or *burdened,* such a transaction being null, except when effected with the mutual consent of both parties to the marriage." *Santiago* v. *Rodríguez,* 72 P.R.R. 253, 262 (Snyder), (1951) ; *Encarnación* v. *Salim,* 69 P.R.R. 715, 722 (Negrón Fernández) (1949) ; *Pérez* v. *Hawayeck,* 69 P.R.R. 46, 49 (Marrero), (1948) ; *Robles* v. *Guzmán,* 67 P.R.R. 671, 679

44

(Marrero), (1947); *Martínez* v. *Registrar*, 62 P.R.R. 832, 834 (Todd), (1944); *Fuster* v. *Paonesa*, 43 P.R.R. 729, 732 (Hutchison), (1932); *G. Llinás & Co.* v. *The Registrar*, 23 P.R.R. 705 (Hutchison), (1916); *Després* v. *Registrar of Property*, 14 P.R.R. 603, 608 (Quiñones), (1908); *Caballero* v. *Registrar of Property*, 12 P.R.R. 214, 216 (Quiñones), (1907); *Moscoso* v. *Registrar of Property*, 12 P.R.R. 378 (Quiñones), (1907).

Section 1313 of the same Code again repeats the limitation on the conjugal administration: "notwithstanding the power which the husband has as administrator he shall not have the power to give, to sell *and to bind for a consideration* the real estate of the conjugal partnership, without the express consent of the wife; every sale or agreement which the husband may make in respect to the said property in violation of this Section and the other provisions of this Code, or in fraud of the wife shall be null and shall not prejudice her or her heirs."

Neither did he have power to encumber their property. An encumbrance—17 *Enciclopedia Jurídica Española* 252, (1910 Edition) —means "a burden, *an obligation of a person to perform or to agree to a thing;* a burden imposed on a property *as well as the act of imposing that same burden;* in the second of the meanings set forth, every encumbrance constitutes a limitation of the ownership *or of any real property right imposed on immovable property* and the same real property rights constitute in turn an encumbrance with respect to the property encumbered." *Robles* v. *Guzmán*, 67 P.R.R. 671, 675 (Marrero), (1947); *Caballero* v. *Registrar*, 32 P.R.R. 702, (Franco Soto), (1924); *Fajardo Sugar Co.* v. *Registrar*, 25 P.R.R. 176, 178 (Del Toro), (1917); *G. Llinás & Co.* v. *Registrar*, 23 P.R.R. 705 (Hutchison), (1916); *Després* v. *Registrar*, 14 P.R.R. 603, 605 (Quiñones), (1908); *Boscio et al.* v. *The Registrar of Property*, 14 P.R.R. 605, 607 (Quiñones), (1908). The phrase "for a valuable consideration" appearing in the afore-cited

§ 1313, means—30 *Enciclopedia Jurídica Española* 29, (1910 Edition)—"the cause by virtue of which a thing is acquired by paying its value or worth in money, in something else, *in services, or through certain liens and conditions* to which the acquirer binds himself such as sale, exchange, leases and dowry." *Agrait et al.* v. *Registrar*, 31 P.R.R. 205, (Del Toro), (1922); *Gautier* v. *Registrar of Humacao*, 24 P.R.R. 658 (Wolf), (1917), p. 660; *Estate of García* v. *The Registrar of Property*, 16 P.R.R. 747, (Wolf), (1910), p. 748; *Vidal* v. *The Registrar of Property*, 12 P.R.R. 198, (Quiñones), (1907).

Undoubtedly, when the administrator of the conjugal partnership in the instant case bound himself by virtue of the second contract to demolish a building belonging to the conjugal partnership which was already under construction, he was performing an act of alienation of a real property right, disposing of the encumbrance of a real property right imposed on an immovable property, and imposing a valuable consideration on the real property right which belonged to the conjugal partnership. After the real property right became a property of the conjugal partnership by virtue of the first contract, the husband by himself, could not alienate, encumber, or impose on it an onerous condition, without the consent of his wife and he did so when he executed the second contract.

In our original opinion we also concluded that, although the building constructed on plaintiff's lot was a building in good faith for which the cost of the materials and labor had to be reimbursed through the corresponding action of accession, the eviction lies, *because there is an agreement regulating the rights of the parties over the building at the expiration of the lease contract.* Considering the question anew, we now conclude that the latter statement can not be successfully reconciled with the principles of juridical analysis. *It is precisely the nullity or validity of the agreement regulating the rights of the parties which is the*

*true question in litigation in the instant case.* To uphold the right of the lessors to the surrender of the leased lot and to the demolition of the building constructed thereon by the lessees we originally had to conclude, as if it were a declarative proceeding, that the second contract executed by the parties could be signed by the lessee exclusively, as administrator of the conjugal partnership because the future agreement of demolition was a clear "act of administration." As a matter of discipline, we would now have to hold, as if it were a declarative proceeding, that because the future agreement of demolition constituted a clear alienation of a real property right of the conjugal partnership, the husband could not alienate the rights of a builder in good faith which the conjugal partnership possessed, without the consent of his wife. Without doubt, eviction would not be the proper remedy to determine neither the validity nor the nullity of the agreement of demolition. In the first case the possessory action of a summary character would become an ordinary action for the specific performance of a contract. In the second case the possessory action of a summary character would become a declaratory action on the rights of the lessees to recover the amount of the materials and labor of the building constructed, and the amount of expenses incurred in the preparation of the land.

The action of unlawful detainer is a possessory action: *Escudero* v. *Mulero*, 63 P.R.R. 551, (Travieso), (1944), of a speedy and summary nature; *Colón* v. *Santiago*, 64 P.R.R. 298, (Travieso), (1944), p. 316. It presupposes the existence of a lease contract where, through the violation of its clauses, the lessor may recover the property leased, or the nonexistence of a contract between the owner and the tenant at sufferance. In those cases where the ordinary landlord-tenant relation or the relation between the owner and tenant at sufferance becomes a different juridical relation, unlawful detainer does not lie, for any claim of another nature is supposed to affect the title of the thing possessed or the

right to the possession, requiring a declarative proceeding. The rights issuing from permanent structure built in good faith can not be settled in an action of unlawful detainer: *Colón* v. *Rotary Club of Arecibo*, 60 P.R.R. 734, 737 (Todd, Jr.), (1942).

 We have discussed subsequently in this case, the nature of the right to indemnity granted by § 297 of our Civil Code to the builders in good faith. The probability that the "right to indemnity" of a builder in good faith does not have real property as an objective, nor that it be constituted on real property has been analyzed, and it has been found that its true object is the reimbursement of an amount of money which constitutes, therefore, a personal obligation of the owner of the land. In other words it deals with a movable according to § 268 of our Civil Code which provides in part that movables are "the obligations and actions, the object of which is to recover money due."

The time has come for the judges of Puerto Rico to come to an agreement as to a possible methodology for studying questions in litigation connected with the civil law. The Italian Code, the Code Napoleon, the German Code, the Spanish Code as well as the American Codes which have followed the patrimonial models of the European civil law, are arranged within a system of institutions of law which do not allow isolation of a single provision from the other provisions comprised in the corresponding institution of law, or to isolate one institution of law from the other. Codes stand on fundamental bases, on a law of bases, which are given to the code-making bodies as general rules from which a system of juridical principles is created, in full harmony with each other, which can produce the doctrinal unity essential in every institution of law to make it valid. It is precisely this harmony among the different doctrinary aspects, all directed towards the same juridical principle, which makes the task of the civilian so pleasant. Thus, for example, in every case where a lease contract contains,

expressly or implicitly, the right of the lessee to build, the legal relation between the parties is covered as to every particular concerning the lease, by the sections governing the institution of law unknown as lease and as to every particular concerning the authority to build, by the sections governing the institution of law known as accession. To hold otherwise is to take shelter in a blind alley which leads to absurdity.

The assertion that the right to indemnity of a builder in good faith is a personal property, could be offered as a model of senselessness which may sometimes be caused by the isolation of any provision within an institution of the civil law, without giving due regard to its other provisions, or to the other institutions of law connected with it.

To deal with this senselessness, we shall have to analyze thoroughly the rights of the owner of the land as well as the rights of the builder in good faith, over the thing constructed. Who is the owner of the building? Who has the title of ownership over the thing built? We shall begin by studying the presumption established by our Code in favor of the owner of the land, which seems to be the implied theory by virtue of which the title of ownership on the thing constructed is placed in the owner of the land and the builder in good faith is reduced to a simple owner of a personal right, which does not rest on the thing built.

It is true that § 295 of our Civil Code provides that "all works, sown lands and plantings *are presumed* to have been made by the owner, *and at his expense,* unless the contrary be proven." The very conceptual anatomy of this provision shows that it deals with a presumption, that is, with the creation of certain artificial facts which support the right set forth, until the juridical facts which may establish the exception are proved. In the case at bar the juridical facts show that we are concerned with the construction of a building by a lessee with the consent of the owner of the land, as stipulated in the lease contract.

Manresa, with his characteristic severity of extreme simplicity, discusses this presumption establishing the different juridical effects, *in the case of buildings made during the lease:*

"Are the presumptions of § 359 [ours 295] in favor of the owner of the land when the property is leased? Laurent holds that according to the Code Napoleon, they are. We believe that the doctrine inferred from the Spanish Civil Code (the same which after all should be inferred from the Code Napoleon) is not in the affirmative. It is true that Laurent himself establishes some exceptions. In fact, for the time being it is best to adhere to the clauses stipulated in the lease contract, especially those dealing with buildings. It might seem that the structure, because of its special nature, and even whatever is sown, should belong to the lessor, *but if the lease contract impliedly or explicitly provides that the lessee has the right to build,* plant or sow, whatever reason the landowner may have to receive the natural or industrial fruits (he shall receive in any case the civil fruits) [rent] disappears and hence the landowner's interest in building, planting or sowing likewise disappears, *such interest being fundamentally the best reason for the capital presumptions of § 359 in his favor."* 3 Manresa 207: (Sixth Edition of *Editorial Reus S.A.*) (1934).

Then, the ordinary presumption of § 295 of the Code is not enough to make the owner of the land also the owner of the building constructed, if the juridical facts show that the structure built by the lessee was done with the consent of the lessor. Who is the owner, then? May it be inferred without distinction that because an indemnity must be paid to the builder in good faith, the owner of the land is the one having title of ownership on the building constructed on his land? Let us see.

Section 297 of our Code provides:

"The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, *by previously paying the indemnity* specified in Sections 382 and 383 of this Code, *and to oblige the person who has built or planted to pay him the*

*value of the land, and the person who sowed, to pay the corresponding rent."*

⠂ Commenting on § 361 of the Spanish Civil Code which is exactly the same as our § 297, Manresa states at page 205:

"The owner of the land is, according to § 358 [294 of our Code] also the owner of whatever is built, planted or sown thereon even if by a third party, *but subject to what is prescribed in the following Sections.* Now, among those Sections, § 361 states that the owner of the land on which anything has been built, sown or planted, *shall be entitled to appropriate it:* then if it does not belong to him immediately, it is not his yet, to whom does it belong? From whom can the owner claim it? From the third person, without doubt, because it belongs to him; *and in order that this third party ceases to be an owner,* he must be compensated one way or the other, *depending on whether he has acted in good or bad faith.* Certainly the ownership status of a third party may be doubtful when he acts in bad faith, *for as we shall see he has no right to a certain compensation, but when he acts in good faith, it is beyond any question.* On the other hand, the same Section entitles the owner of the land to compel the third person to buy the land on which he has built whereby the third party becomes the owner.

"Laurent holds that the third person in question *can only demand an indemnity and that the evidence which he produces can not be directed to showing the ownership of the thing built or planted."* (Italics and brackets ours.)

⠂⠂⠂ Is this the rule that has prevailed, underlying our genuine Puerto Rican civil law, to hold that the right to indemnity does not rest on real property? It is well to remember that neither the Code Napoleon, in its § 555, nor the Louisiana Code in its § 508, contains the right of election provided by the Spanish Civil Code and by our Code as to the right of the owner of the land to compel the builder to buy the land. It is likewise well to remember that *the third party under the civil law* is anyone who is not bound by a contract, which in this case would be the conjugal partnership, or the wife. Manresa continues at page 205:

"Then, with what title does he claim indemnity? As owner of the materials? But may he never, even if acting in good faith, claim more than the value of the materials or seeds?

"In this specific point, and insofar as the Spanish Civil Code is concerned, we deem more proper the construction given by Mr. Navarro Amandi who states that: *'the property right of the person who built or planted as well as the property right of the owner of the land must be firmly established.* But as it is a question of two property rights in conflict, the law decides in favor of one of the two owners, either by following the rule that the accessory follows the principal, or according to the good or bad faith of the actor or the usefulness or value of the thing, as provided by § 377.'" (Italics ours.)

In connection with the applicability of the § 361 of the Spanish Civil Code (our 297) Manresa states that it applies indiscriminately to the owner of the land, *or to the owner of the materials employed only*, which is one of the alternatives of the right of accession. 3 Manresa 217, Sixth Edition; besides it is well settled that "the materials employed in a construction as well as the plants adhering to the land *become real property and give form to a new thing of a different nature.*" 3 Manresa 211, Sixth Edition. Says Manresa at page 206:

"The Supreme Court has stated that since the case submitted to the Court of Instance for the weighing of the evidence was included in § 361 of the Civil Code, *it may not be considered that whatever is built in good faith on another's land becomes the property of the owner of the land* if there is no prior indemnity as established by §§ 453 and 454, inasmuch as construing the aforesaid Sections, not only in their liberal sense, but also having in mind the spirit of the law, *we must consider, that until said indemnity takes place, the owner of the land does not acquire the ownership of whatever is built, sown or planted,* and he must choose to acquire it by way of indemnity or to compel the person who built it or who is responsible therefor to pay him the price of the land occupied." (Italics ours.)

The Supreme Court of Spain has ratified this theory in the Judgments of November 27, 1902, January 2, 1928, May 21, 1928 and March 18, 1948—6 Scaevola, pp. 573, 574, (15), *Instituto Editorial Reus*, 5th ed. Manresa continues:

"There are no apt terms for assuming that the right of accession implies the lack of knowledge *of the separation in ownership relations between different persons* of the different ways of using the facilities that the land offers. Thus the adverse evidence of the third party may tend to show that he has sufficient title to possess, either as a mere possessor or as owner of whatever is built." 3 Manresa 205, 206, Sixth Edition.

Since 1913, when the case of *People* v. *Municipality of San Juan*, 19 P.R.R. 625, 637 (Del Toro), was decided, our own jurisprudence established the principle that the owner of the land is not by reason of that fact alone, the lawful and exclusive owner of the building which has been constructed in good faith on his land. Since 1939, when the case of *Berrocal* v. *Registrar*, 54 P.R.R. 501 (De Jesús), pp. 505, 506, was decided, the principle was likewise established by our own jurisprudence that in the construction of a building upon another's land by authority of or by virtue of a contract with the owner of the land, the builder in good faith retains ownership of the construction against the owner of the lot and he can record his building in the Registry of Property.

According to Manresa and to the decisions of the Supreme Court of Spain and of the Supreme Court of Puerto Rico which we have set forth, we are now ready to answer the question which we asked in the beginning: when it is the case of a building constructed in good faith, built on another's land, who is the owner of the building? Without doubt and in conformance with the logical structure of our Code, the builder in good faith is the one having the title on the building until the owner of the land makes use of the right of election provided by § 297 of our Code, and pays the owner of the building for the materials and labor, or compels him

to pay the value of the land. Not until this indemnity is paid may the owner of the land assert his title of ownership of the immovable built, and on the contrary, the builder in good faith possesses not only the title of ownership of the building, but also the potential right of becoming the owner of the land. The builder in good faith has two alternatives: (1) either to be paid the materials and labor, or (2) to cause the owner to sell him the land on which he has built, both of which serve as a basis for § 382 of our Code which sanctions the right of the builder in good faith to retain a thing until he is reimbursed for the materials and labor. The owner of the land shall resolve the election provided by the Code in his favor, either retaining the construction built by the builder in good faith, or selling to the builder the land on which the construction is built. So it appears that affirmative action lies with the owner of the land and not with the owner of the building.

The theory that the right to indemnity of a builder in good faith is personal property or a movable property right is pretended to be based on a citation from professors Planiol and Ripert's *Tratado Práctico de Derecho Civil Francés.* That citation altogether lacks the methodological strictness required in the study of a controversial issue concerning comparative civil law. The right of a lessee, a builder in good faith on a leased lot, is not included in that treatise among the credit rights but among the rights of a proprietor to the surface of the land, which is part of the civil institution of common ownership—3 Planiol and Ripert *Tratado Práctico de Derecho Civil Francés (Edición de la Cultural S.A. de la Habana),* pp. 286 *et seq.,* § § 330, 331, 332 and especially as to the practical application of surface right to lease contracts where consent to build is stipulated, § 333 at p. 286 (1942).

Surface right *which forms part of the study of common ownership* is defined as follows in the latter treatise:

"This right consists in the ownership of buildings or plantings located on another's land. In principle, everything that is on the soil belongs to the owner by accession. Surface right repeals that rule by separating the ownership of the land from what is found on it. It may be complete or incomplete depending on whether it covers all objects which are on the land's surface or only some of them, *such as buildings,* plantings or even isolated specific trees.

"Although the Code does not expressly mention surface right, its validity can not be questioned. It appears from § 553 which provides that any building, sowing or planting is presumed to have been made by the owner in the absence of proof to the contrary, *thereby admitting that the buildings or plantings standing on the surface of the land may be owned by a person other than the* owner of the land; it also finds support in § 664 which authorizes the division of a house into stories . . .

"Very often a businessman without enough money to acquire a vacant lot or who does not wish to take any risks *acquires by lease an uncultivated piece of land reserving the right to construct thereon,* usually light buildings, such as hangars or workshops. In this case the lease contract regulates the juridical condition of those buildings. *It may be agreed* that constructions shall belong to the owner pursuant to the rights of accession; in such case the lease does not create a surface right. *But it may also be agreed that they shall belong to the lessee who has built them,* and such agreement may be either express or *inferred from the conditions of the lease contract.* We have here a case of a *temporal surface right.* The lessee may obtain with it an increase in his credit, mortgaging his constructions, but he may not pledge them together with the right of lease *because such constructions are real property and the pledge may only refer to personal property.*

"*A serious question, which ought to be foreseen in the contract,* is the destination of those constructions [immovables and the pledge] at the expiration of the lease . . . It is frequently said that they shall belong to the owner, either with or without indemnity. At other times, *especially when those constructions are of little worth,* the lessee binds himself to remove them before leaving, returning the land vacant and leveled." (Italics and brackets ours.)

When there is no express agreement as to the destination of these buildings, as in the instant case with respect to the first contract, Planiol and Ripert, in the same treatise, refers to § 278 of the afore-cited work at p. 245, which states:

"Contrary to the opinion generally sustained by the authors, *the jurisprudence applies § 555 to lessor-lessee relations.*" (Italics ours.)

(This refers to § 555 of the Code Napoleon.—See the Code Napoleon p. 142—Juan Buxó Edition, Havana, 1921; substantially identical with §§ 362, 363, and in its final provisions to § 371 and § 453 of the Spanish Code and to §§ 298, 299 and in its final provision to § 297 and to § 382 of our Code, all the sections of the three Codes are connected with the right of accession regarding immovables.) Planiol and Ripert continue:

"This notwithstanding, it is necessary to make an essential distinction. Actually, only when the lessee has constructed on the land *without the consent of the owner and violating the stipulations of the lease contract, does* § 555 apply directly and imperatively....." (Italics ours.)

(This refers to the first paragraph of § 555 of the Code Napoleon, the first paragraph being equivalent to §§ 362 and 363 of the Spanish Civil Code and §§ 298 and 299 of our Code.) Planiol and Ripert continue:

"*Where on the contrary,* the constructions were built according to the stipulations of the lease contract, the agreement of the parties must be fulfilled. *If the contract has no provision for an indemnity to the lessee by the owner* who retains the *construction,* the Judge may apply § 555 by analogy. *But in such case there is no reason against considering the lessee as a possessor in good faith,* the owner having the power to choose either reimbursement of materials and labor or the equivalent of the increase in value of the land."

(This refers to the final provision of § 555 of the Code Napoleon equivalent in part to §§ 361, 453 of the Spanish

Civil Code and to §§ 297, 382 of our Code.) Planiol and Ripert continue:

, "*When does* the right *by accession* of the owner *commence* over the constructions and plantings made by the lessee? Shall it be from the time the lessee builds or plants or at the expiration of the contract?

"Frequently, the parties make an express agreement in the contract regarding such points: generally they are attributed to the lessee, it being deemed that the lessor waives his right of accession, at other times he is obliged to take said buildings or plantings upon the expiration of the contract under specific conditions.

"When the contract (does not) stipulate it, the authorities are inclined to decide rightfully, that the free exercise of the right of enjoyment of the lessee . . . is opposed, while the contract is in force, to the right of accession of the owner, the latter not being able to exercise that right until after the expiration of the contract. In effect, the only way to reconcile the rights of the lessee, according to the lease contract, with the right of accession of the owner, lies in not permitting the exercise of this latter right except in accordance with the state of things existing at the end of the contract. Thus it appears: 1st. *that the lessee may sell or mortgage the construction* and his creditors may, during the life of the lease exercise their rights over the mortgaged property; 2d. the lessee may remove whatever was built while the contract is in force; 3d. if the constructions were destroyed by fire prior to the expiration of the contract, the lessor can not claim from the insurance company the payment of the indemnity stipulated." 3 Planiol and Ripert, pp. 245, 246 and 247 of the Sixth Edition.

We believe we have clearly established that until the owner of the land pays the indemnity provided by § 297 of the Civil Code of Puerto Rico, the builder in good faith is the true owner of the construction. His eminently real property right rests as much on the land of the owner, which he may own if the lessor so chooses, as on the building constructed. His right to retain the thing is a logical consequence of its immovable character.

Contrary to the presumption that the right to indemnity of a builder in good faith partakes of the nature of a personal right or is so declared by law, the commentators of the French civil law, as well as the case law of the French Courts, assert that the right to indemnity to which a builder in good faith is entitled, and among the builders in good faith are included lessees with authority to build, is a real property right, which may be sold or mortgaged, which affects the surface right and which may be recorded in the Registry of Property as an ownership right independently of the ownership right of the owner of the land.

There is no substantial difference in this respect from the Spanish legislation and the gloss on the subject, 3 Sánchez Román, *Derecho Civil*, 93–95, 150–151; (Second edition of *Sucesores de Rivadeneyra)*, (1900) ; 1 Morell, *Legislación Hipotecaria*, 689, 690 *et seq.; (Editorial Reus S. A.* 2d ed., 1928) 2 Morell *Legislación Hipotecaria* 417, 418, (same edition). There is also no substantial difference from the Puerto Rican legislation and the gloss regarding the same institution of law.

Since 1941, when *Palermo* v. *District Court*, 58 P.R.R. 191, 198 (Travieso) was decided, this Court clearly established the difference between an ordinary lease and the lease with consent to build:

"In the present cases simple lease contracts in which the lessee promised to pay a monthly rental for the use of a house belonging to the lessor are not involved. The situation in these cases which we are considering is different. The owner of the land *rented it to the defendants for the express purpose of constructing buildings of a permanent nature* as dwellings. The defendants and their predecessors in interest built the houses in good faith; *and nothing was agreed upon between the owner of the land and the builders* to regulate the rights of both parties in regard to the buildings."

See also *People* v. *Carrasquillo*, 58 P.R.R. 178, (Todd, Jr.), (1941), *Berrocal* v. *Registrar*, 54 P.R.R. 501 (De Jesús),

58

(1939); *People* v. *Municipality of San Juan*, 19 P.R.R. 625, (Del Toro), (1913).

It is true that the parties may agree on the extinguishment of said right when the lease contract terminates: *Colón* v. *Rotary Club of Arecibo*, 60 P.R.R. 734, 736 (Todd, Jr.), (1942); *Aybar* v. *Jiménez*, 60 P.R.R. 729, 732, (Todd, Jr.), (1942); *Palermo* v. *District Court*, 58 P.R.R. 191, 197 (Travieso), (1941); *Rivera* v. *Santiago*, 56 P.R.R. 361, 370 (De Jesús), (1940). But when no agreement is made on that particular or the contract agreed to is void, the provisions concerning accession are applied as a suppletory contract provided by law.

In brief, the true juridical effect of the first contract signed by the parties is that the conjugal partnership obtained three clear and exact real property rights over the lot leased and over the construction begun: (1) a right of ownership over the building under construction; (2) a right of retention over the thing built; (3) a right of option to buy the land belonging to another. The act of option, the affirmative act which converts these three real property rights into a mere indemnity, is imposed by the statute on the owner of the 'land and not on the builder in good faith. Until the owner of the land pays for the materials and labor —Judgment of January 2, 1926 of the Supreme Court of Spain—, he does not acquire the ownership of the thing built, which is the juridical condition terminating with the right of retention as well as with the possibility on the part of builder in good faith, to acquire the land on which he has built.

Although it is true that in the second contract executed between the lessor, owner of the land, and the lessee, as administrator of the conjugal partnership, there is an agreement to demolish the construction at the expiration of the lease contract, that contract is null and void, because without the wife's consent for the alienation of the three real

property rights involved, the husband by himself had no legal capacity to bind the conjugal partnership.

The possibility has been likewise analyzed that if a lessee with consent to build builds on another's land, he is not entitled to indemnity, because the building is an *improvement* within the scope of § 1463 of our Civil Code which provides that a lessee shall have, with regard to the useful and voluntary improvements, the same right which is granted to the usufructuary, in connection with § 416 of the Code, which provides that the usufructuary may make, on the property given in usufruct, whatever improvements he deems proper, either for a useful purpose or for pleasure, *provided he does not change its form or substance,* but he shall have no right to be indemnified therefor. As may be seen it is a question of extending to the lease contracts *with permission to construct,* the same theory applied to simple contracts, *without authority to build.* Such a rule can not be favored.

Our own Court has held that when the lessee is entitled to build, the construction can not be considered as a useful improvement or one for pleasure: *People* v. *Carrasquillo,* 58 P.R.R. 178, 181 (Todd, Jr.) (1941):

"The building of a house in another's land in good faith and with the consent of the owner of the land, whether it be under a lease contract or by mere tolerance cannot be considered as the useful or pleasure improvements referred to by Section 416 of the Civil Code as applied in the case of *González* v. *Peña & Balbás, supra,* but on the contrary must be regulated by the provisions of Section 297 of the Civil Code (1930 ed.) as has been decided by this Court in the cases of *The People* v. *Municipality of San Juan,* 19 P.R.R. 625; *Succession of Collado et al.* v. *Pérez et al.,* 19 P.R.R. 881; *King* v. *Fernández et al.,* 30 P.R.R. 550; *Ermita de Nuestra Señora, etc.* v. *Collazo,* 41 P.R.R. 594; *Berrocal* v. *Registrar,* 54 P.R.R. 501, and *Rivera* v. *Santiago, supra.* See also 3 Manresa, *Código Civil Español,* 203 *et seq.*"

To consecrate in our case law the principle that the right of indemnity of a builder in good faith on another's land, is personal property or a useful improvement or one for pleasure, or a right which does not rest on the thing constructed, would be a serious error. It would then be sufficient if the owner of the land would sell, grant or convey to another person the land whereon it has been built in good faith, in order for the alleged personal obligation, from person to person, without any connection with the immovable built, to leave the builder in good faith defenseless before the new acquirer. The impact of this decision on our life as a people would be disastrous. There are whole towns in Puerto Rico where the lands belong to the municipal government and the building constructed thereon to private persons. We have denied the right to anyone who does not possess the land under title of ownership, no matter how long he may have been in possession thereof, to acquire ownership title by prescription: *Rivera* v. *Santiago*, 56 P.R.R. 361, (De Jesús), (1940). We have likewise held, that the ownership of lands belonging to the Insular Government can not be acquired by prescription: *People* v. *Municipality of San Juan*, 19 P.R.R. 625, (Del Toro), (1913). The "usage," and we are using the word usage within the meaning that it has in lease law, of leasing small lots in order to construct thereon the dwellings of our poor people, is so widespread in our country, that it includes some of the most populated slums of our capital. The careful study by some of the justices who preceded us, of almost all the points connected with accession, unquestionably, was not aimed at a vacuum.

Therefore, we reconsider our former judgment of June 30, 1953 and the judgment rendered by the former District Court of Puerto Rico, Mayagüez Section, on June 12, 1952 is affirmed.

Mr. Chief Justice Snyder and Mr. Justice Pérez Pimentel concur in the result.

MR. JUSTICE ORTIZ, dissenting.

I dissent from the opinion on reconsideration delivered by this Court. We must bear in mind that we are dealing with a lease contract for a fixed term of five years. In the original contract it was stipulated by all the parties that the lessee "is free to erect and introduce any improvements on the leased lot provided they are in keeping with the progress and needs of the business." In the opinion on reconsideration it is assumed that this consent to build and make *improvements* implied a consent to construct the concrete building, which the lessees actually constructed on the leased lot, and that this consent, according to the opinion of the majority, converted the lessees into builders in good faith, with the corresponding rights provided by §§ 297, 300, 382 and 383 of our Civil Code, that is, the right to indemnity for expenses incurred in the construction of the building, should the owner of the land choose to appropriate the building, or the right to the land by paying its price, if the owner so decided.

I agree with the theory that, in this case, the lessors and owners of the land, assuming the applicability of those sections, which I deny, have not exercised any option, since they seek to evict the lessees and cause the latter to remove the building, that is, the lessors are not interested either in the building or in selling the land to the lessees. Under those circumstances, and assuming again that we are within the ambit of application of those sections, which I deny, I agree that the builders (in good faith) are entitled to retain the lot until the owners of the land exercise their right of option. Castán, *Derecho Civil Español*, Vol. 2, pp. 221, 222, 7th ed., "modified and considerably enlarged," and the Judgments of May 21, 1928, January 2, 1928 and March 23, 1943 of the Supreme Court of Spain, cited to that effect. I likewise agree that the right of retention of a builder in good faith is a real property right, because it is attached

to, and directly connected with, an immovable. Therefore, upon the husband (lessee) stipulating in the complementary clauses, personally and without the participation of his wife, that if "no agreement is reached as to a new lease, the lessee shall be obliged to withdraw, on his own account . . . whatever buildings he may have constructed on the leased lot," he would be waiving that alleged right of retention, that is, he would be encumbering a real property right belonging to the conjugal partnership existing between him and his wife, to the benefit of the owners of the land, contrary to the provisions of the Civil Code.

But I do not believe that the provisions referring to builders in good faith apply to lessees and I do not believe that the latter are entitled at all to retain the lot leased, even if they have built on the lot with the consent of the owner thereof, as in this case, that is, even if they are builders in good faith. I am convinced that, under clear and mandatory provisions of the Civil Code, a lessee must remove any improvements or buildings made by him, at the expiration of the lease contract, without any right of retention or to indemnity, and the fact that he has been a builder in good faith does not alter the situation at all; therefore, the unlawful detainer proceeding brought herein should prosper. I am aware, of course, that the doctrine contrary to my view has been adopted by this Court in several cases, such as *People* v. *Carrasquillo*, 58 P.R.R. 178; *Palermo* v. *District Court*, 58 P.R.R. 191; *Aybar* v. *Jiménez*, 60 P.R.R. 729; *Colón* v. *Rotary Club*, 60 P.R.R. 734; *Figueroa* v. *Rodríguez*, 68 P.R.R. 248; *Freyre* v. *Blasini*, 68 P.R.R. 198 and *García* v. *Stella*, 69 P.R.R. 911. But I believe that those cases constitute judicial legislation, contrary to the provisions of the Civil Code and that, therefore, they should be overruled. Those cases may have been inspired by sound motives of social order, but such motives are to be considered by the legislature and not by the courts when the latter do so contrary to the letter of the statute.

Section 1463 of the Civil Code provides the following:

"Section 1463.—Rights of lessee as to useful and voluntary improvements.—A lessee shall have, with regard to the useful and voluntary improvements, the same rights which are granted a usufructuary."

Section 416 reads thus:

"Section 416.—Improvements permissible.—The usufructuary may make, on the property given in usufruct, whatever improvements he deems proper, either for a useful purpose or for pleasure, provided he does not change its form or substance; *but he shall have no right to be indemnified therefor.* He may, however, remove the said improvement, if it be possible to do so without damage to the property." (Italics ours.)

Section 1451 imposes on the lessee the obligation to return the estate *in the same condition in which he received it.*

Section 1444 provides that the lessee is entitled to be maintained in the peaceful enjoyment of the lease during *all the time of the contract,* (in this case, five years which already expired).

Section 1455 states that if the lease has been made for a specified time, *it expires on the day previously fixed,* without the necessity of any notice.

Section 1459 provides that the lessor may judicially *dispossess* the lessee among other causes, *upon the expiration of the contract period,* (and that is precisely what the lessor herein has attempted to do).

Those are the specific provisions of the Civil Code which have been violated in the cases cited. But let us center our attention, for the time being, on § 416 of our Civil Code. According to § 1463, § 416 also refers to lessees. We must remember that under § 416 the lessee *may make,* on the property leased, whatever improvements he deems proper, either for a useful purpose or for pleasure (the right to make improvements), *but he shall have no right to be indemnified,* it being further provided that the lessee may

remove the improvement, if it be possible to do so, without impairing of the property.

Against the applicability of this section which so precisely fit the circumstances of this case, two objections may be raised which I shall consider separately in an attempt to prove, in my opinion, that they have no basis:

(1) That the construction of a building on a lot is not an improvement.

(2) That when there is an express agreement for the construction of a building, the builder acts in good faith, and that § 416 is not applicable to a builder in good faith under an express agreement.

Let us consider the first ground. In my opinion it is obvious that, under the civil law system, a building constitutes an improvement in the property and continues being such under any section of the Civil Code. But, in the case of *People* v. *Carrasquillo, supra,* which involved a lease contract without a fixed term, it was held that "the building of a house in another's land in good faith and with the consent of the owner of the land, whether it be under a lease contract or by mere tolerance cannot be considered as the useful or pleasure improvements referred to by Section 416 of the Civil Code." In the opinion of the case the following is stated:

The *Enciclopedia Jurídica Española,* Vol. 22, page 216, defines what improvements are in the following manner:

'The construction, works and additions made upon any building or property to improve it and in general anything done which augments this value.

'There are three classes of improvements: *necessary, useful,* and *voluntary . . .'*

"On page 217 it is stated that the useful improvements are: 'those made for improving the *light, comfort* and *sanitary condition* of a property.' "

Apparently, it is understood in that opinion that a building is not a useful improvement because it is not erected for

improving the light, comfort and sanitary condition of the property. But here such expression serves, not to define the concept of useful improvement, but to make clear some of its effects. The true definition is the one indicated in the very citation from the *Enciclopedia Jurídica Española*, that a useful improvement consists of the additions made upon a building or property to improve it or anything done which augments its value. A building increases the value of the lot where built, and therefore, is a useful improvement, inasmuch as *it improves the property in a useful way*.

In Castán, *Derecho Civil Español*, Vol. 1, p. 621, 7th ed. it is stated:

"Expenses or useful improvements are those which, without being necessary, serve to increase the yielding capacity of the thing and consequently its value (*as new constructions* or plantings or works or labors)." (Italics ours.)

Section 453 of the Spanish Civil Code corresponding to our § 382, incorporated by reference, under § 297, builders in good faith. Section 382 provides the following:

"Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

"Useful expenses are refunded to the possessor in good faith with the same right of retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses."

Referring to § 453 of the Spanish Civil Code (our 382) Manresa tells us that an improvement is simply a useful expense with permanent results, which increases the value of the property. In 4 Manresa 228, 229, 5th ed., the following is stated:

"B. Regarding improvements, or expenses of permanent results.—Law 10, tit. 33, Partida 7, sets forth the meaning of the word expenses in the afore-mentioned sense, classifying them as necessary, useful and voluntary or for pleasure.

. "The necessary expenses, those which 'si non se fiziessen' (if not incurred) the thing would become deteriorated or altogether lost, and the useful expenses, so called because 'they augment the income of the thing upon which they are expended' should be returned to the possessor in good faith. The expenses incurred by voluntary improvements, purely for luxury or mere pleasure, entitle the possessor to remove those improvements or take them away, if possible, unless, 'the owner be willing to pay him what would be their value, after they were taken away.' (Law 44, tit. 28, Partida 3.)

"The same law, in accordance with Law 41, does not allow for restitution of the thing unless the expenses are returned to the possessor in good faith, thus providing a guarantee or right of retention."

The last paragraph copied refers to builders in good faith in general, without indicating its applicability to lessees. Now, (1) the construction of a building involves expenses; (2) the building is *useful* to the property. It is not a *necessary* expense because the property might subsist adequately without the building, that is, the property would not be lost or become worse without the building. But it is evident that the building involves a useful expense; (3) the building has permanency, that is, it involves an expense with permanent results, although, as has been held, it may be removed without prejudicing the form and substance of the property; (4) the building increases the value of the property. All these four elements mean "a useful improvement," and all those four elements concur in the case of a building. Therefore, a building is a useful improvement.

In 4 Manresa 243, fifth edition, the following is stated:

"Improvements.—The effects of the useful expenses or those incurred purely for pleasure are called improvements. Improvements are useful when they increase the proceeds or produce real advantage or benefit. They are purely for luxury or mere pleasure when meant as an ornament or for comfort, those which embellish the thing without being essential or intended for profit.

"Improvements, or the increase in value of the thing, may result from the expenses incurred by the possessor, or from circumstances extraneous to him. In this group may be included the natural accessions, the increase in value produced by the construction of a railway, road or canal, the enlargement of a street, the source of a spring of natural or mineral water, the growth of the trees, etc."

4 Manresa 258, 259, ratifies the criterion that a useful improvement is one which increases the value of the property, even if it does not involve a *necessary* expense, as long as it is a useful expense.

In 4 Manresa 395, 5th ed., (p. 485, 6th ed.) commenting precisely on § 487 of the Spanish Civil Code, identical with § 416 of ours (the lessee has no right to indemnity or of retention for useful improvements which he makes), it is clearly stated that a building is a useful improvement, for the purposes of that section (416), and the Supreme Court of Spain is cited to that effect. Such ruling is contrary to the holding of this Court in the cited case of *People* v. *Carrasquillo*. At any rate, in 4 Manresa 394, 5th ed., the following is stated.

"We understand that among the possible improvements not altering the form or substance of the thing, constructions are included, since they may be demolished, leaving the land free at the termination of the usufruct.

"The judgment of April 20, 1901, of the Supreme Court, affirms the judgment of the *Audiencia*, which deemed as a useful improvement, not compensable to the usufructuary, pursuant to § 487, nor to the lessee, pursuant to § 1.573, the construction of three outbuildings made by the lessee on the property leased.

"Pursuant to the judgment of January 16, 1906, of the Second Section of the Supreme Court, the lessee or usufructuary who plants trees on the land leased or given in usufruct, lacks the power to cut them and take them with him, because such improvement may not be removed without causing damage to the property. This doctrine is unconvincing; the tree may

be damaged when cut, but not the land, which is the thing given in usufruct, and it is to that thing undoubtedly that the last part of § 487 refers."

In 9 Scaevola 340, 5th ed., there is a comment on § 487 of the Spanish Civil Code which is identical with our § 416, and it is clearly stated that (1) under that section, *for the purposes of the aforesaid § 487 (416), a building is a useful improvement* and (2) *that § 487 (416) referring to usufructuaries, constitutes an exception to the provisions referring to builders in good faith.* The following is stated at pages 340 and 342 (it being understood that when speaking of usufructuaries it also means lessees) :

"The spirit of the provision is that the usufructuary may become the owner, in the property he enjoys, of certain objects or improvements, as long as they may be separated from the thing given in usufruct without impairing or damaging it in its form and substance. Are § § 362 and 487 in contradiction, or is it possible to reconcile them? The first Section provides that any person who builds, plants or sows anything 'in bad faith' on another's land shall lose it in benefit of the owner of the land; *therefore, if any of the improvements either useful or for pleasure with which § 487 deals, consists of constructions* or plantings, which may not be removed from the land given in usufruct, shall they remain as property of the naked owner by virtue of the right of accession? Or, in other terms, shall accession prevail over the right granted to the usufructuary by § 487? May they be reconciled, or shall the latter being subsequent and comprising a special kind of case still prevail against the express provision of § 362? In the first place, we must settle the doubt of whether a usufructuary may build, construct or plant on a property given in usufruct. After deciding this preliminary point, the question at issue finds a clear and prompt solution. Within the sense of laxness prevailing in the Code on this subject matter, we take the view that *the usufructuary does not alter the form or substance of the property given in usufruct by building or constructing thereon.* As to planting, without doubt he may do so.

"The French jurist, Pothier, denies such right, but other text writers do not agree with him because they understand

that the building does not alter the substance or form of the lot, if the latter was not destined for some other specific purpose. In fact, the usufructuary, by demolishing the construction and removing his materials, may turn the land to its primitive state, without leaving any traces thereon.

"Accepting the former, *and the usufructuary being able to build, construct and plant on the land* which he enjoys, shall *the building, construction* or planting pass to the naked owner by accession? Offhand, it seems that the usufructuary is a possessor in bad faith or is acting as such, because in the case under discussion, he knows that he does not own said land; but in the case of a usufruct, we believe, as Laurent, that the rules applying to the possessor in bad faith do not apply to him, because no matter how much or how little, he has some share in the lot, the fruits of which he enjoys, *and because, in the last instance, as such usufructuary he is governed by his own rules—§ 487—as an exceptional principle from which § 362 stems.* It would be a real expoliation to authorize him, under that section, to introduce improvements either for a useful purpose or for pleasure, as for example, a small room where to live, a shed for cattle, a premise for a small industry, to plant a few shadow trees for protection from the summer heat, and later under the shield of the right of accession to consent that the naked owner profit 'tortiously' from the property which the usufructuary was able to create lawfully. It is such a simple problem that it should not be labelled so. It should be borne in mind particularly that in artificial accession or by the industry of man only the bad faith of the acceder entails confiscation; and that in the case set forth, such bad faith can never be more than a mere conjecture which lacks value as a presumptive act, because strictly speaking it is the case of a legal authorization, that is, not of a mere fact, but of a juridical fact which has to be obeyed in its command and its effects.

"We understand that only in case when improvements for use or for pleasure can not be separated without serious damage to the estate given in usufruct or when such improvement can not be carried away, may the naked owner appropriate it but then it would not be by accession but because their separation implies a detrimental disintegration. Both in substance and form, the latter are accidents which may be easily foreseen by the usufructuary; and before a doubtful solution of justice

it seemed more equitable to presuppose the *donare videtur.*"
(Italics ours.)

In the Judgment of April 20, 1901 of the Supreme Court
of Spain a lessee of a lot for a fixed term of ten years con-
structed "three outbuildings or one-story houses" on the land
leased. It was held that pursuant to § § 1573 and 487 of
the Civil Code of Spain, (our § § 1463 and 416) the lessee
did not have the right at the end of the lease to be indemni-
fied for such buildings, since they were useful improvements
for which the lessor had not expressly bound himself to pay
indemnity, (as was the case herein).

In the case of *Rivera* v. *Trinidad,* 48 Philippine Reports
396 there was a verbal agreement for occupation for an
indefinite time, on a monthly payment basis. The lessee con-
structed a building on the property. It was held that the
building was a useful improvement and that at the termina-
tion of the lease (from month to month) the right of the
lessee with respect to such improvements or buildings was
regulated by § § 487 and 1573 of the Civil Code (our § § 416
and 1463), and that the sections providing for builders in
good faith do not apply to a lessee. The following is stated
at page 400:

"The rights of the defendant with respect to the improve-
ments made on the property by him must be governed by
article 487 in relation with article 1573 of the Civil Code.
Under article 487 the defendant is entitled to remove improve-
ments made by himself so far as it is possible to do so with-
out injury to the property; and this means that he may remove
the improvements provided he leaves the property in substan-
tially the same condition as when he entered upon it. *Articles
361 and 453 of the Civil Code, which define the rights between
the owner of land and builders of improvements thereon in
good faith, are not applicable as between landlord and tenant,
since the Code supplies specific provisions designed to cover
their rights. Besides the tenant cannot be said to be a builder
in good faith as he has no pretension to be owner.* (4, Man-
resa Commentaries, vol. 4, 445 4th ed.)" (Italics ours.)

In the case of *Fojas* v. *Velasco*, 51 Philippine Reports 520, a lessee constructed on leased land a "house of mixed materials." It was held that the house was a useful improvement and that the provisions of the Civil Code referring to accession and builders in good faith were not applicable. The following is stated at page 522:

"The case is governed not by articles 361 and 453 of the Civil Code as contended by appellants, but by articles 1573 and 487 of the same Code, as indicated by appellees. In this connection, it need only be recalled that the lessees have been holding the land under a rental contract. Accordingly, upon termination of the lease, the right of the lessees with respect to improvements placed by them on the leased property is determined by article 487, which entitles them to remove the improvements, provided they leave the property in substantially the same condition as when they entered upon it. (*Alburo* v. *Villanueva* [1907], 7 Phil., 277; *Cortés* v. *Ramos* [1924], 46 Phil., 184; *Rivera* v. *Trinidad* [1925], 48 Phil., 396.)" To that same effect see *Montinola* v. *Bantug*, 71 Philippine Reports 449.

All the jurisprudential evidence within our reach shows that the term "useful improvement" has a connotation and definition generally accepted in the civil law and that universally, with the exception of Puerto Rico, it is admitted that a building constitutes a useful improvement, but in *People* v. *Carrasquillo, supra,* where the error originated, it is stated that a house is not the useful improvement to which § 416 refers, and that the provisions referring to possessors in good faith are in point. We now ask to what useful improvement does § 416 refer? That section makes no distinction among different kinds of useful improvements. It generally refers to all kinds of useful improvements including houses or buildings. Section 416 makes no distinction, but this Court made a purely judicial one. Section 416 does not say "useful improvement with the exception of buildings constructed in good faith." We shall later turn to that point again to determine which exception belongs to

which section, but, for the time being I must give my personal opinion that this Court judicially engrafted a distinction as to the kinds of useful improvements. I have been unable to find a single civil law authority which indicates that § 416 refers to certain kinds of useful improvements and not to others. Now then, whether or not a building constitutes a useful improvement is a matter of fact, of physical and objective reality. If the building was constructed in good faith, it does not alter the reality nor the concrete fact that a building is involved and that the building increases the value of the property. The mental or subjective attitude of the builder does not change objective reality nor transform or alter the fact that the property has increased in value. The building continues being a useful improvement always, irrespective of whether it has been built in good or bad faith. The building always continues being a useful improvement even if the owner has given consent to build. Consent or the lack of consent does not transform the specific or intrinsic nature of the building nor its impact on the value of the property. But in *People v. Carrasquillo, supra,* it is stated that a house is not a useful improvement when it is constructed in good faith. That in my opinion is a *non-sequitur*, contrary to physical realities.

In the subsequent case of *Aybar v. Jiménez, supra,* the following is stated at page 733:

"If we do not accept the interpretation, cited by the lower court, which some legal writers and tribunals may have enunciated as to what constitutes a useful improvement or one for pleasure, in relation to the building of a house, that is because we prefer to follow the modern legal tendency of giving the law a liberal interpretation so as to accord full justice to the parties in an ordinary trial, wherein these matters which cannot be raised and settled in the summary action of unlawful detainer may be argued and passed upon.

"Our decisions, in the *Carrasquillo* and *Palermo* cases, *supra,* as well as in those of *Rivera v. Santiago,* 56 P.R.R. 361

and *Carrasquillo* v. *Ripoll and Maldonado, Int.,* 56 P.R.R. 375, are founded on these principles and their holdings are only to the effect that it is not in the summary unlawful detainer action wherein a determination can and must be had of the amount which a defendant may be entitled to claim for structures of a permanent nature which he has erected with the consent of the owner of the land, unless there is an agreement between the parties as to their rights and that the complaint will be dismissed without prejudice to the defendant filing the ordinary suit which may be proper and wherein the rights of each party may be settled."

In other words, confronted with the authorities which show that a house was a useful improvement, this Court stated that it had held that it was not, for the purposes of § 416, because it was not fair and because it was not convenient that the matter be discussed in an unlawful detainer proceeding. But that matter is independent from the question raised. One thing is what should be the adequate action or proceeding, and another thing is the definition of the term "useful improvement." One thing is whether or not unlawful detainer is an adequate proceeding and another thing is whether § 416, in referring to "useful improvement" includes houses and buildings. In other words, what it is practically stated in *Aybar* v. *Jiménez* is that "a house is not a useful improvement under § 416, because unlawful detainer is not the adequate proceeding." But even from that point of view, if we reach the conclusion that a house or a building is a useful improvement under § 416, then unlawful detainer would be an adequate proceeding, since, in such case, the lessee would not be entitled to indemnity and would have to remove the house without having a right of retention, under the very provisions of § 416, there being then no obstacle for eviction by way of unlawful detainer. That is, the starting point is contrary to that set forth in *Aybar* v. *Jiménez.* There, the nature of the proceeding is taken as a starting point to determine the nature of a building as a useful improvement. Actually, the nature of the building as a

useful improvement, that is, the applicability of § 416, should be the basis and starting point for determining what should be the adequate proceeding.

A collateral datum with respect to the case of *People* v. *Carrasquillo*, where the erroneous doctrine of the inapplicability of § 416 to houses constructed in good faith by a lessee first appeared, is the following, as stated in the opinion at page 181:

"The building of a house in another's land in good faith and with the consent of the owner of the land, whether it be under a lease contract or by mere tolerance cannot be considered as the useful or pleasure improvements referred to by Section 416 of the Civil Code as applied in the case of *González* v. *Peña & Balbás, supra,* but on the contrary must be regulated by the provisions of Section 297 of the Civil Code (1930 ed.) as has been decided by this Court in the cases of *The People* v. *Municipality of San Juan,* 19 P.R.R. 625; *Succesion of Collado et al.* v. *Pérez et al.,* 19 P.R.R. 881; *King* v. *Fernández et al.,* 30 P.R.R. 550; *Ermita de Nuestra Señora, etc.* v. *Collazo,* 41 P.R.R. 594; *Berrocal* v. *Registrar,* 54 P.R.R. 501, and *Rivera* v. *Santiago, supra.* See also 3 Manresa *Código Civil Español,* 203 *et seq.*"

Now then, none of the cases cited by this Court in *People* v. *Carrasquillo* is applicable to a lessee. In none of them was the builder a lessee and none of them discussed § 416. In none of them was it held by this Court that the afore-cited § 297 and not § 416 applied in cases of lessees. None of them held that a house is not a useful improvement pursuant to § 416. Therefore, the authorities cited in *People* v. *Carrasquillo* to buttress its opinion fall by the wayside and are in no way applicable to the circumstances of the very case of *People* v. *Carrasquillo*.

From another point of view, § 111 of the Mortgage Law provides that in order to extend a mortgage, construction of new buildings shall be considered improvements. In the work *Lecciones de Derecho Hipotecario* of Luis Muñoz Morales, Vol. 2, p. 71 *et seq.* it is stated that the construction or

erection of buildings constitute a useful improvement. To that effect see 4 Roca Sastre, *Derecho Hipotecario*, p. 256; 3 Morell, *Legislación Hipotecaria*, p. 699; Galindo y Escosura, *Legislación Hipotecaria*, p. 221; Barrachina, *Derecho Hipotecario*, Vol. 3, p. 75.

Outside of Puerto Rico, the weight of authority is overwhelming to the effect that a building is a useful improvement. But further still, according to the original contract executed between the parties in the case at bar, as the contract has been construed in the opinion on reconsideration of this Court, the building in question herein is considered as an improvement. In clause F of that contract the parties state that the lessee "is free to erect and introduce any improvements on the leased lot." This Court believes that said clause carries with it an express agreement which is equivalent to a consent to build the construction in question. Therefore, the *ratio-decidendi* of the opinion on reconsideration is to the effect that a building is a useful improvement, contrary to the holding in *People* v. *Carrasquillo*. If the basis of the doctrine of *People* v. *Carrasquillo* consists of the view that a building is not a useful improvement, that basis can not prevail in the case at bar, because the parties themselves consider the building a useful improvement.

But it could be alleged that although a building is in general a useful improvement, it is not such for the purposes of § 416. But the term has a uniform meaning which should be the same throughout the entire field covered by the Civil Code. It should not have a certain definition for the purposes of certain sections and an entirely different one for the purposes of other sections. When a section uses the general term "useful improvement," its definition should be understood as applicable in the manner it has been generally accepted, unless otherwise provided by the section itself, which is not the case with § 416. And I have already expressed my opinion to the effect that the good or bad faith

of the builder should not affect or disturb the intrinsic nature of the building, as a useful improvement.

We must concede that a building is a useful improvement for the purposes of § 416. But it could be alleged that the provisions of the Civil Code which refer to accession or to builders or possessors in good faith constitute an exception to § 416 and that § 416 is not applicable to a case like the one at bar, where there is an express agreement permitting the lessee to construct a building. We shall consider, in the first place, the argument of the exception. The sections referring to possessors or builders extend to those persons in general, that is, to all kinds of possessors or builders. Section 416 in referring to lessees who make useful improvements, refers to a class or specific and special category of possessors or builders, that is, to those who are lessees, within the special contractual relation regarding leases. If we are to consider that one section is an exception to the other, it is obvious that what is general should not be an exception to what is specific. On the contrary, if a general category is established and then a specific category governed by its own rules is also established, the specific class, with its specific rules, should be considered as an exception to the general category. I believe that that is a clear rule of legal hermeneutics. If there is a conflict between a general statutory provision and a special one, the latter should prevail within its special field and should be considered as an exception to the general provision. It all leads to and inexorably precipitates the view that § 416 is an exception to the general sections regarding accession, and not vice versa. But from the cases hinging on *People* v. *Carrasquillo* it is inferred that what is general constitutes an exception to what is special. Notwithstanding this, the authorities and commentators that I have cited clearly establish the doctrine that § 416 is an exception to the sections concerning accession. See for example 9 Scaevola 340, 341, 342, fifth edition, commenting on § 416, (487 of Spain), when he states: "In

the last analysis, as such usufructuary (lessee), he is governed by his own rules— § 487 (our 416) —as an exceptional principle from which § 362 develops (accession)." And see the Philippine cases cited, holding that the sections concerning accession and builders in good faith "are not applicable as between landlord and tenant, since the Code supplies specific provisions designed to cover their rights," (*Rivera* v. *Trinidad, supra*), and that "The case (of a lessee) is governed not by articles 361 and 453 of the Civil Code (accession and possessors in good faith) but by articles 1573 and 487 (our 416) of the same Code." *Fojas* v. *Velasco, supra.* So far, I believe I have proved the following:

(1) That a building constitutes a useful improvement for the purposes of § 416.

(2) That § 416 is an exception to the general provisions regarding accession, and that, therefore, the juridical situation regarding a building constructed by a lessee should be governed by the special rules provided for in § 416.

But the essential argument against my theory in the case at bar is to the effect that here there was an express agreement which converted the lessees into builders in good faith and which makes § 416 inapposite to this case. Let us bear in mind that the contract involved here is not expressly contrary to § 416, that is, it does not provide that the lessee is entitled to indemnity nor to the right of retention. The agreement was that the lessee would be entitled to introduce improvements. But that clause precisely repeats what § 416 itself expressly provides, which copied again reads:

"Section 416.—Improvements *permissible.*—The usufructuary (read lessee, in view of § 1463) *may make, on the property given in* usufruct *(lease), whatever improvements he deems proper,* either *for a useful purpose* or for pleasure, provided he does not change its form or substance; *but he shall have no right to be indemnified therefor.* He may, however, remove the said improvement, if it be possible to do so without damage to the property." (Italics ours.)

In clause F of the original contract it is stated that the lessee *"is free to erect* and introduce any *improvements* on the leased lot," that is, the lessee is allowed to make, *may make* on the property covered by the lease the (useful) improvements which he deems convenient. That clause is identical with the provision of § 416; the authority or consent granted to the lessee in the contract is identical with the authority or consent granted to the lessee by § 416. Therefore, clause F neither adds anything to, nor disturbs the juridical situation of the lessee in the instant case, which would be exactly alike under § 416 with or without clause F. The authority to introduce improvements granted in the contract is superfluous, since it constitutes an exact repetition of the authority granted by § 416.

Now, § 416 grants the lessee the right to introduce improvements but it further provides that if the lessee exercises that right and makes the improvements he has no right to indemnity. The original contract in the instant case grants that same right to the lessees herein. But then, § 416 comes into play and denies the right to indemnity, even should such a right exist. But it could be alleged that because of the consent to introduce improvements the lessees become builders in good faith, and that in such case § 416 is not applicable. But just the opposite is so since § 416, by its own terms, is applicable when the lessee is authorized to introduce improvements and makes them, that is, § 416 practically provides that even if the lessee is a builder in good faith because he is authorized to make improvements, even then, he is not entitled to indemnity. Section 416 itself converts the lessee into a builder in good faith in authorizing him to introduce improvements, and taking into account the fact that he is a builder in good faith, denies him a right to indemnity if he is a lessee. Section 416 denies indemnity, not because the builder has acted in bad faith which can not be the case, because he is authorized to build, but because he is a lessee, as we shall later see. The theory

involved implicitly in the cases which follow the case of *People* v. *Carrasquillo* is tantamount to the following proposition. Section 416 does not apply to a lessee who is a builder in good faith, that is, it does not apply to a lessee authorized to build. But what § 416 literally provides is the opposite, that is, that it applies to a lessee authorized to build under the very § 416.

It could be urged that the situation herein is different, because it deals with an *express* agreement, an *express* consent to build. But a builder may act in good faith, by virtue of an implied consent of the owner (by tolerance of the owner and without his protest), as well as by virtue of an express consent. But granting the greatest effectiveness possible to an express consent in the contract, that contractual consent can not have more force than the legislative authority granted by operation of law and which appears in § 416 itself. And even in the case of that preeminent authority, by the force of law, there is no right to indemnity, pursuant to the provisions of § 416.

Naturally, an express agreement by virtue of which the parties stipulated that the lessee would be entitled to the the right of indemnity and retention would be lawful. The parties could agree to the contrary of § 416, that is, they could agree as to the inapplicability of § 416, but that was not the agreement in the case at bar. The parties confined themselves to stipulating that the lessees could make the improvements that they deemed convenient. It may be inferred therefrom, as a matter of law, that the lessees are builders in good faith, but in order to support the theory implied in the opinion on reconsideration, other inferences would have to be established to the effect that by virtue of such express permission, the parties implicitly agreed that § 416 was not applicable. The law must be a part of the contract as to those matters not covered expressly in the contract. Stated differently, if, as a matter of law, an Act is not applicable to a certain juridical relation, it

must be understood that the parties, upon establishing such a relation contractually, also agreed on the non-applicability of said Act. In order for the doctrine involved in the opinion on reconsideration in this case to prosper, the following proposition must be valid: when the parties expressly agreed that the lessees would be authorized to make improvements, it should be understood that they also stipulated not only that the lessees would be builders in good faith but also that they have a right to indemnity, that is, that the sections regarding accession and not § 416, would apply. But that would be precisely to beg the question in issue, as to which statutory provisions apply to a lessee who builds in good faith, that is, which statutory provisions should be considered as part of a contract. There is greater validity in the opposite position, which is the one held in this dissenting opinion, to the effect that once the parties expressly stipulated that the lessees could make improvements, they implicitly stipulated that § 416 would apply, since § 416 itself assumes the premise that a lessee is authorized to make improvements. Therefore, it must be understood that the parties implicitly agreed, in this case, that the lessees would not be entitled to indemnity.

Let us examine another aspect of the question. If the oft-repeated § 416 would not apply in case of a lessee who is a builder in good faith, then it would only apply to a lessee building in bad faith. The sections regarding accession already cover the case of a builder in bad faith. Therefore, § 416 would be idle, superfluous, without reason for being, it would be operating in a vacuum, it would not apply to any kind of situation. That could not have been the intention of the legislature. But it could be alleged, with quite a margin of reasonableness, that a builder in bad faith, in general, would not be entitled to remove the building, while a lessee builder in bad faith would be entitled to remove the building under § 416. But that assumes that in the conflict between the sections referring to accession and

§ 416, the former and not § 416 would apply when the lessee builds in good faith, while in the case of bad faith, § 416 and not the sections regarding accession would apply. But such duality in its applicability and non-applicability does not stem from § 416. On the contrary, the very section in question provides that it is applicable to a lessee authorized to make improvements.

The Supreme Court of Spain has repeatedly held that a lessee who builds a house on a leased lot is not entitled to indemnity and may not be considered a builder in good faith, since he is well aware that he is building on another's land and because a lessee possesses in the name of the owner, and not in his own right. Judgments of May 23, 1946; January 15, 1904; February 28, 1906; December 15, 1911. So we see that in none of those cases was there an express agreement for the construction of improvements or buildings. The existence of an express consent would convert a lessee into a builder in good faith. But I have already indicated that § 416 presupposes, assumes or takes as a premise that the lessee is a builder in good faith and notwithstanding this, it provides that such lessee shall not be entitled to any indemnity. As stated by Scaevola in Vol. 9, 5th ed., p. 340 *et seq.*, the lessee builder has no right to indemnity, not precisely because he is a possessor in bad faith, but because the lease gives rise to a special relation which should be governed by its own special rules, since the lease contract gives rise to certain special rights and obligations, and for that reason § 416 should prevail over the general sections referring to accession.

In the judgment of March 26, 1927 of the Supreme Court of Spain to the effect that the lessor would indemnify the lessee for the value of the improvements made by the lessee, it was held that the lessor could not evict the lessee until he paid such an indemnity. But that was not the agreement in the case at bar. No payment of indemnity was stipulated here. It was only agreed that the lessee could

introduce the improvements. As we have already seen, such a pact does not destroy but ratifies the applicability of § 416.

Let us consider another aspect of this case, the one referring to the right of retention, which is the backbone of the opinion on reconsideration. The right of retention is a consequence of the right to indemnity, that is, until the owner pays the indemnity, the builder is entitled to retain the property and to defeat an unlawful detainer action. (Judgment of March 18, 1948 of the Supreme Court of Spain.) We have already seen that a lessee is not entitled to indemnity under § 416 and, therefore, he is in no way entitled to retention. But even independently of the non-existence of the right to indemnity, there are other provisions of the Civil Code which deny the lessee the right of retention. In the first place, the content of the right of retention varies according to the nature of each special juridical relation. There is a certain class of retention rights as to classical builders in good faith, and other different kinds for different concepts and with a different scope as to the lease identified with the usufruct, the *antichresis*, the mandate and the pledge, and as to each one of those relations different concepts and postulates concerning retention are applied. 4 Manresa 266, 267 *et seq.*, 5th ed. As decided by the Supreme Court of Spain in its judgment of October 7, 1949, "the right of retention is not standardized in our legal order, but it is set forth in diverse provisions which contemplate different juridical institutions, wherefore, in each case and pursuant to the legal provision to which it refers, the necessary and pertinent consequences must be deduced." Now then, the Civil Code provides that the lessee shall have the same rights of an usufructuary as to the useful improvements made by the lessee. Section 450 of our Civil Code provides the following:

"Upon determination of the usufruct, the thing in usufruct shall be delivered to the owner, unless the right of retention appertaining to the usufructuary or to his heirs,. for such expenses which they should recover, be enforced. After the delivery is made, the bond or the mortgage shall be cancelled."

This last section should be read together with §§ 429 and 430 which provide that extraordinary *repairs* shall be made at the expense of the owner, that is, those repairs that go beyond the ordinary repairs required by the wear and tear produced by the natural use of things (§ 428) and that since the owner is obliged to reimburse the usufructuary for such extraordinary repairs, if the owner should refuse to pay its value, the usufructuary has the right to retain the thing until he is reimbursed with the products thereof. Now then, it has been established that the right of retention of a usufructuary is limited *exclusively* to the sole case of extraordinary *repairs* made by him. 9 Scaevola 470, 5th ed.; Judgment of December 22, 1920 of the Supreme Court of Spain. A useful improvement is not a repair; a building is an improvement and does not fall within the category of repairs. Therefore, a usufructuary has no right of retention as regards improvements or buildings constructed by him. *Ipso facto*, a lessee, in the same situation of a usufructuary as to improvements, does not have the right of retention as to such improvements or buildings.

Some of the provisions of the Civil Code referring to the lease contract also militate against and defeat any possible right of retention on the part of the lessee. Under §§ 1433 and 1444 the lessor binds himself to give the lessee the use of the property for the time specified in the contract. At the expiration of that time, the right of retention also expires. Section 1451 provides that the lessee must *return* the estate, at the expiration of the lease, *in the same condition in which he received it*, except what may have been destroyed or impaired by time. or by unavoidable causes. In the Judgment of January 13, 1930 of the Supreme Court

of Spain it was held that a lessee is under the obligation to leave the property leased once the lease terminates. In the judgment of April 28, 1930 that principle was applied to a lessee who had built on the land leased. In 10 Manresa 599, 5th ed., the following is stated:

"The lease confers on the lessee the temporary enjoyment of the thing leased. Time is one of the conditions of the contract. It may be inferred herefrom that, upon the expiration of the legal term of duration of the juridical relation established in the contract, the parties return to the same position with respect to the things and the undertakings stipulated, as they were before entering into the contract. The attainment of this purpose supposes the restitution by the lessee to the lessor, of the thing leased."

Section 1455 provides that if the lease has been made for a specified time, it expires on the day previously fixed, without need of any notice, and § 1459 provides, in part, that the lessor may judicially dispossess the lessee upon the expiration of the conventional period.

All those sections eliminate expressly any possible right of retention of the lessee once the lease has expired, in this case, five years. In the case at bar there was no agreement in the contract contrary to the right of eviction, to the right of recovery on the part of the lessor. As we have already seen, mere consent to make improvements does not carry with it an agreement of retention on the part of the lessee.

In reconsidering the original opinion and holding that the lessors in this case are not entitled to evict the lessees because they are builders in good faith, this Court is silently overruling the case of *Santos* v. *Torres*, 66 P.R.R. 421. In that case, exactly as here, there was a lease contract for a term of five years. The lessee built two houses, with the lessor's knowledge, and without any objection on her part, that is, the houses were built "with the knowledge and tolerance" of the owner of the property and, therefore, the lessee was a builder in good faith. The lessee alleged that an unlawful

detainer did not lie because he was a builder in good faith, by virtue of the ruling in *People* v. *Carrasquillo*, and subsequent cases. This Court held that the unlawful detainer issued, that the afore-mentioned cases were not apposite to a case involving a lease for a fixed term (as the case at bar) and that, *pursuant to § 416* the lessee did not have to be indemnified. The following was stated, referring especially to the cases of *People* v. *Carrasquillo* and subsequent cases:

"The evidence introduced by the defendant, to which the trial court accorded full credit, shows that the defendant took possession of the property in April 1942, by virtue of a contract of lease entered into with the former owner of the property; that in 1943 the defendant built two zinc-roofed frame houses, one to be used as a dwelling by his family and the other to be occupied by a subtenant; that the former owner of the property made no objection to the building of the two houses; and that in the property there were sweet potatoes, bananas, yams, and other crops planted by and belonging to the defendant. The first error assigned is non-existent.

"There is no doubt that when the plaintiff purchased the property he thereby acquired the right to terminate the existing lease, as the latter was not recorded in the registry of property; and that the defendant is entitled to demand that he be permitted to gather the fruits of the crop corresponding to the current year and to recover from the vendor any damages he may have suffered. Sections 1439 and 1461 of the Civil Code (1930 ed.). The defendant lessee is entitled to remove any improvements, useful or recreative, which he may have made on the property during the existence of the lease; but he has no right to be indemnified therefor. Section 416 of the Civil Code. Under the above-mentioned legal provisions, if the contract of lease entered into between the former owner Celestina Silva and the defendant had continued in force until the expiration of the 5-year term, the defendant would not have been entitled to recover from that owner the value of the houses built by him. Why should he have a right to be indemnified therefor by the new owner of the property, who did not even know that the houses belonged to the lessee?

"*The cases on which the lower court relied* to dismiss the complaint *are not applicable to the facts of the present case.*

If the facts involved in the cases cited by the trial court are examined it will be seen that all those cases deal with the erection of buildings on another's land with the consent of the owner of the land and *without limiting the time during which the land in question could be used.* In the case at bar the defendant leased the property *for a term of five years,* and he knew that upon the expiration of said term he would be entitled to remove any improvements, useful or recreative, made by him on the property during the term of the lease; but he would have no right to recover the value of the improvements." (Italics ours.)

The same essential doctrine that I have attempted to develop in this dissenting opinion is the one set forth in *Santos* v. *Torres.* It could be argued that the latter differs from the instant case because here there was an agreement or express consent to build, whereas in *Santos* v. *Torres* it was only a tacit authority, the owner failing to protest, even though she knew about the constructions. But it is obvious that a builder is one in good faith under any of the two situations, either expressly or implicitly, because of the conscious tolerance of the owner of the land. That difference is not important; it plays no role as to labelling the builder a constructor in good faith. In *Santos* v. *Torres,* the lessee was a builder in good faith by virtue of an implied consent. In the case at bar the lessees are builders in good faith by virtue of an express consent. What matters is that in both cases the builder is one in good faith, irrespective of the express or implied nature of the consent. The essential thing is that in *Santos* v. *Torres* it was held that even in the case of a builder in good faith, a lessee for a fixed term has no right to indemnity. Now then, I wish to give my opinion that the distinction which this Court attempted to make in *Suntos* v. *Torres* from the case of *People* v. *Carrasquillo* was incorrect. I understand that a lease for a fixed term operates, either by an express agreement or by operation of law, on a month-to-month basis, for example, when the time is not fixed. But I understand that *Santos* v.

*Torres* should be considered as a reaction against the doctrine of *People* v. *Carrasquillo*, since this Court expressly states in *Santos* v. *Torres* that its doctrine is based on § 416 of the Civil Code, which was applied to a lessee builder in good faith, notwithstanding the fact that in *People* v. *Carrasquillo* it had been stated that the latter section did not apply to a lessee builder in good faith.

I understand, like Scaevola, that, at times, "logical strictness may be the morphine of jurists." (Scaevola, Vol. 6, p. 588, 5th ed.) It is convenient to discuss the principles of essential justice and social utility that may have induced this Court, on the basis of noble and generous motives, to adopt the doctrine of *People* v. *Carrasquillo*, which is, in my very personal opinion, contrary to the letter of § 416. Those principles may be summarized as follows:

(1) A lessee who is a builder in good faith should be indemnified in order to avoid unjust enrichment on the part of the lessor.

(2) It would be unfair to place a lessee, who pays for the use of the property, in a lower position than a clandestine or precarious possessor, since if the latter builds in good faith he is indemnified therefor and, hence, a lessee who pays rents and is entitled to use the property, and to build, as is the case herein, should have the same right.

(3) It would be contrary to the society's interest in protecting the "unfortunates" who have meager resources, to establish a precedent which obliges the lessees to remove the buildings constructed by them without a right to indemnity.

Those considerations give origin to important problems which I shall try to discuss hereinafter. But as far as I am concerned there is, as a preliminary question of high standing, a still more basic problem which consists in determining whether this is not a case where the rule should be enforced, that the trier should not substitute his sense of justice for the clear letter of the statute and whether a

law, because of its anti-social practical results, should be reduced to a nullity by virtue of judicial interpretation. Naturally, the Judge is not a mechanical automaton. If the law gives way to doubts or ambiguity, it is the duty of the Judge to apply a sound sense of interpretation through a process of ascertaining the true legislative intent and of coordination with other statutory provisions. Even so, the legislative intent is not found, inexorably in the personal philosophy of the judge. The basic social climate surrounding the approval of the law would have to be determined, that is, what was the fundamental (and not transitory, a matter of a day) public opinion which gave birth to that law. But this is a case in which, in my opinion, the statutory provisions are clear in their letter, and leave no room for doubts. It is provided that a lessee, being able to make improvements, that is, authorized to make improvements, is not entitled to indemnity by virtue of such improvements. Such was the intent of the legislature, and "the litigation should terminate" there. We must bear in mind that § 14 of our Civil Code provides as follows:

"When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."

Section 21 of the Civil Code provides:

"The distinction of laws into odious or favorable with a view of limiting or extending their provisions, shall not be made by those whose duty it is to interpret them."

I consider it timely to admit, naturally, that I may be wrong. In juridical matters no one may consider himself as possessor of the absolute truth. But in view of my personal opinion as to the scope of § 416, I sincerely believe that the doctrine of *People* v. *Carrasquillo* is contrary to the letter of that section.

Now then, the letter of § 416, which I believe should be maintained, may also have a basis in justice and reasonable-

ness. The fundamental principle which has inspired the statutory provisions on accession, insofar as they grant the builder in good faith a right to indemnity, is to avoid the unjust enrichment on the part of the owner of the land. 6 Scaevola 545, 587, 5th ed. But in the case of a lessee under § 416 there is no such possibility of such unjust enrichment. The lessee is entitled to remove the building. The lessor is not entitled to "retain" the building, he does not become the owner of the building by accession. He is not enriched. What could happen would be an "unjust" prejudice to the lessee in obliging him to remove the building or to destroy it as may be the case. Then the investigation would be to the effect of whether such prejudice is unjust. The lessee enters voluntarily into a temporary relation, knowing that his possession or enjoyment will terminate at a specific time. He should not allege that it would be unfair for him not to retain the land leased beyond the term previously fixed. The right of retention would be contrary to the temporary nature of the contractual lease relationship. On the other hand, the lessee obtains advantages and benefits by virtue of the lease, and his possession during the term is protected by the law and the contract. Upon constructing a building with the implied knowledge that he has to remove it upon the expiration of the lease, he is in a condition to compare the advantages of his possession protected during a certain period of time as well as the advantage of using a building during that guaranteed time, with the disadvantage of removing or destroying the building at the expiration of the lease. The lessee has the opportunity to weigh for himself the balance of conveniences. An alleged prejudice which the lessee deliberatedly assumes is not, therefore, unfair. On the other hand, the clandestine possessor does not have his possession protected by the law or by a contract, and he has not entered voluntarily into a contractual relation. And the law protects that unlawful

possessor in case the owner should want the building for himself, that is, to prevent an unjust enrichment on the part of the owner. The unlawful possessor should not have the right to remove the building, because his original possession was clandestine, the principle of accession being applicable while, with respect to the lessee, he could have the right to build as an incident to his right to use the property and, therefore, he should be entitled to remove the building.

It could be alleged that the "justice" of this case lies in the fact that it was an express agreement authorizing the construction. But as I have already indicated, such agreement does not add anything to the provisions of § 416, which establishes that same authority. And as to the present discussion, for the purpose of the differences between an unlawful possessor and a lessee, I am assuming that both are builders in good faith.

The social impact of a decision obliging lessees to remove their buildings without a right to indemnity might be invoked. I do not believe that such an impact covers too wide a number of lessees. There are relatively few lessees who have sufficient economic resources to erect concrete buildings of considerable value. I believe that the greater number of poor lessees would build frame houses which, in any event, would be easily removed without losing their integrity. In any case, that would be a matter for the legislature's consideration.

When I express my opinion that the cases hinging on *People* v. *Carrasquillo* should be overruled, I should also indicate that, in my opinion, the legislative silence after those opinions were delivered should not be regarded as a ratification. I do not believe in the postulate that a judicial error should inexorably become a law, immune to reversal, because the legislature failed to act. There would have to be attributed to the legislature a state of alert knowledge,

of deliberate tolerance, of intelligent intention not to act, of conscious omission, before it may be inferred that the legislature agreed with a judicial interpretation of one of its laws. I do not believe that such is the case. By the same token, it could be inferred that the legislature considered it unnecessary to act, to ammend a section which by itself is clear, until the error is eliminated.

A final consideration. I believe that unlawful detainer is adequate to decide this controversy. Complicated findings of fact are not involved here. It merely involves a question of law, the applicability of § 416 and the effect of an express agreement. If we assume that § 416 is applicable, then the lessee may be evicted without a right to indemnity. That problem offers no complications of any kind.

Because I believe that an unlawful detainer is proper in this case, I think that the judgment appealed from should be reversed and, therefore, I dissent from the majority opinion.